United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

---------

 Filed September 16, 1997

 No. 96-1394

 Illinois Public Telecommunications Association, 

 Petitioner

 v.

 Federal Communications Commission and 

 United States of America, 

 Respondents

 Competitive Telecommunications Association, et al., 

 Intervenors

 Consolidated with Nos. 96-1395, 96-1407, 96-1428, 96-1429,

 96-1466, 96-1476, 96-1478, 96-1479, 96-1482, 96-1484,

 96-1485, 96-1486, 97-1016, 97-1021, 97-1022, 97-1039,

 97-1048, 97-1069, 97-1070, 97-1080

 On Motion for Clarification or, 

 Alternatively, for Partial Rehearing

---------


 Before: Edwards, Chief Judge, Ginsburg and Sentelle, 
Circuit Judges.

 Supplemental opinion for the court filed by Circuit Judge 
Ginsburg.

 Ginsburg, Circuit Judge: The Interexchange Carrier (IXC) 
Parties,1 petitioners and intervenors, have moved for clarifica-
tion of the effect of our judgment of July 1, 1997 or, alterna-
tively, for partial rehearing. We grant the motion and clarify 
our opinion as follows.

 When this court remands a rule to an agency for further 
consideration with little or no prospect of the rule's being re-
adopted upon the basis of a more adequate explanation of the 
agency's reasoning, the practice of the court is ordinarily to 
vacate the rule. See Allied-Signal, Inc. v. USNRC, 988 F.2d 
146, 150-51 (D.C. Cir. 1993) (court takes account of "the 
seriousness of the order's deficiencies (and thus the extent of 
doubt whether the agency chose correctly) and the disruptive 
consequences of an interim change that may itself be 
changed"), quoting International Union, UMW v. FMSHA, 
920 F.2d 960, 967 (D.C. Cir. 1990), which in turn referenced 
Washington Metro. Area Transit Comm'n v. Holiday Tours, 
Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) and American Hosp. 
Supply Corp. v. Hospital Prods., Ltd., 780 F.2d 589, 593-94 
(7th Cir. 1986), both setting out analogous factors considered 
in deciding whether to grant a preliminary injunction. See 
also A.B.A. House of Delegates Res. No. 107B (Annual 
Meeting, San Francisco, Aug. 5-6, 1997) (listing factors to 
guide the court's exercise of discretion in deciding whether to 
vacate agency action, and recommending that "a reviewing 
court should normally strike the balance in favor of vacating 
the agency's action, unless special circumstances exist"). 
Thus we have vacated FCC rules even when we have "not 
foreclose[d] the possibility that the Commission may develop 

__________
 1 Cable & Wireless, Inc., the Competitive Telecommunications 
Association, Excel Telecommunications, Inc., Frontier Corp., LCI 
International Telcom Corp., MCI Telecommunications Corporation, 
Sprint Corporation, Telco Communications Group, Inc., and World-
Com, Inc.


a convincing rationale" for re-adopting the same rule on 
remand. Petroleum Communications, Inc. v. FCC, 22 F.3d 
1164, 1173 (D.C. Cir. 1994).

 Pursuant to the aforementioned criteria, we now clarify 
that the court in this case did intend to vacate those portions 
of the Payphone Orders 2 setting at $.35 the compensation 
that the IXCs must pay to payphone service providers for 
subscriber 800 and access code calls, both prescriptively 
during the interim period and as the default rate thereafter. 
The court likewise intended to vacate those portions of the 
Payphone Orders requiring that, during the first phase of the 
interim plan, the IXCs with annual toll revenues in excess of 
$100 million pay the full amount of the compensation rightful-
ly due from all IXCs.

 The FCC set the compensation rate for subscriber 800 and 
access code calls at the deregulated coin call rate of $.35 
because of the supposed similarity in the cost of originating 
the various types of payphone calls. As we emphasized in 
our opinion, however, "the record in this case is replete with 
evidence that the costs of local coin calls versus 800 and 
access code calls are not similar." Illinois Public Telecom-
munications Ass'n v. FCC, 117 F.3d 555, 563 (D.C. Cir. 1997). 
The FCC had purported to disagree with that evidence, but it 
"never provided any reasons for its 'disagreement.' " Id. at 
564. We infer that, if it were possible to reconcile the 
evidence with the agency's decision, the FCC would at least 
have attempted to do so. The FCC's "failure to respond to 
contrary arguments based on solid data" not only, as we said, 
"epitomizes arbitrary and capricious decisionmaking," id.; it 
also leaves the court with no basis for allowing the $.35 rate 
to remain in place pending further consideration on remand.

 The FCC invoked "administrative convenience" for its deci-
sion that the 22 largest IXCs would have to pay millions of 
dollars per month for the costs of services received by other, 
smaller IXCs during the first phase of the interim plan. As 

__________
 2 Implementation of the Pay Telephone Reclassification and 
Compensation Provisions of the Telecommunications Act of 1996, 
CC Docket No. 96-128, Report and Order, 11 FCC Rcd 20541 
(1996); Order on Reconsideration, 11 FCC Rcd 21233 (1996).


the court explained, however, administrative convenience 
"cannot possibly justify" that decision. Id. at 565. "Perhaps 
more fundamentally," we noted, "the FCC did not adequately 
justify why it based its interim plan on total toll revenues, as 
it did not establish a nexus between total toll revenues and 
the number of payphone-originated calls." Id.

 Consequently, the court "grant[ed] the petition for review 
on these points," including the IXCs' explicit request that the 
Payphone Orders be vacated in these respects. The IXCs' 
motion for clarification is therefore

Granted.